UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME ALBERTO PEREZ, | 1:10-cv-01434-DLB (HC) |
|     Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |
|     v. | |
| TERRY GONZALES, | [Docs. 1, 23] |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  Local Rule 305(b).

PROCEDURAL BACKGROUND

In the Stanislaus County Superior Court, Petitioner pled no contest to numerous drug, firearm and theft charges in exchange for sentencing concessions.  Petitioner was sentenced to nine years in state prison.

On January 14, 2010, the California Court of Appeal, Fifth Appellate District affirmed the judgment.  On May 5, 2010, Deputy Clerk, Robert R. Toy, of the California Supreme Court issued a letter stating, "Our records indicate the Court of Appeal filed its decision on January 14, 2010.  The last day we could have entertained any pleading was March 15, 2010.  (Cal. Rules of

Court, rule 8.264.)  (Traverse, at p. 12.)[1]

Petitioner filed the instant federal petition for writ of habeas corpus on August 5, 2010. Respondent filed an answer to the petition on December 15, 2010, and Petitioner filed a traverse on January 21, 2011.  Respondent filed a reply to the traverse on January 24, 2011.  Pursuant to this Court's request, Respondent submitted further briefing on January 28, 2011.  On February 11, 2011, Petitioner filed a motion to amend his traverse to demonstrate excuse for the alleged procedural default.

## STATEMENT OF FACTS

On October 6, 2006, an 11-count information was filed charging Petitioner and his wife, Theresa Aquirre, with transporting methamphetamine and marijuana, possessing methamphetamine and marijuana for purpose of sale, unlawful possession of a firearm and ammunition, receipt of a stolen vehicle, and vehicle taking or driving.  A prior strike, a prison prior and two prior controlled substance convictions were specifically alleged with respect to [Petitioner] only. [citations] [Petitioner] and Aquirre both entered not guilty pleas and [Petitioner] denied the special allegations. [N.1]

[N.1] A separate information was filed on the same date charging [Petitioner] with receiving a stolen vehicle while released on bail.  This information was dismissed.

[Petitioner] and Aquirre each filed a separate motion to suppress evidence. [Petitioner] joined in Aquirre's motion.  After hearing, both motions were denied. [Petitioner] and Aquirre accepted negotiated plea offers.

On December 10, 2008, a change of plea hearing was held.  In exchange for [Petitioner's] no contest plea to all of the charges and admission of the prior strike, the prison prior and one of the prior drug conviction allegations, he would be sentenced to a term of nine years and the remaining special allegation would be dismissed.  In exchange for Aquirre's no contest plea to one count of being an accessory to the crime of transporting methamphetamine (a lesser related offense to count I), she would be granted probation for a period of three years and the remaining charges would be dismissed.  Aquirre was required to waive her appellate rights as a condition of the plea agreement but [Petitioner] was not.  He was advised that his obligations under the plea agreement did not include surrender of his right to appeal from the denial of the suppression motion.  (See Pen. Code, § 1538.5, subd. (m).)

The court asked [Petitioner], "Are you pleading no contest because after talking with your attorney you're satisfied that if you went to trial there's a substantial probability you would be convicted? [Petitioner] answered, "Yes." The court continued, "That, plus the promises made to you with regard to the sentence the reason you're doing this?" [Petitioner] said, "Yes." [Petitioner] also

---

[1] Because Petitioner did not label his attachments to his Traverse, the Court references the pagination as reflected in the Court's Case Management Electronic Filing System.

2

responded affirmatively to the court's query whether he had enough time to discuss the matter with his attorney and whether he told the attorney all the facts and circumstances of the case. [Petitioner's] counsel affirmed that he had enough time to review the matter and discuss it with [Petitioner]. [Petitioner] replied negatively to the court's query whether anyone had threatened him or anyone close to him to obtain the plea. Aquirre was asked the same questions and replied in the same manner as did [Petitioner]. [Petitioner's] counsel stated that there was a factual basis to the entry of the plea and it was set forth by the prosecutor. [N.2] [Petitioner] confirmed that he understood a no contest plea is the legal equivalent of a guilty plea. The court found [Petitioner] had waived his rights and entered the plea voluntarily and intelligently.

[N.2] The prosecutor proffered the following factual basis for [Petitioner's] plea: The charges originated from a traffic stop involving [Petitioner] and Aquirre. On or about January 16, 2005, [Petitioner] knowingly transported an item containing over 80 grams of methamphetamine and another item over four grams of methamphetamine. On the same date, over six grams of methamphetamine, at least one handgun, one shotgun and some ammunition were found at his residence, as was a Honda that had been reported stolen. Scales, totes and cash were found on the persons of [Petitioner] and Aquirre. On the same date, a bag [Petitioner] was carrying when he left on foot after the traffic stop was found abandoned. It contained eight bags of marijuana packaged for sale. [Petitioner] has a prior conviction for vehicular manslaughter with gross negligence, as well as "the listed convictions in the prior set forth in [Penal Code section] 667.5(b)."

[Petitioner] sentencing hearing was conducted on February 23, 2009. At the outset, [Petitioner's] counsel stated: "Your honor, I do, however, I want to inform the Court that Mr. Perez is wanting to withdraw his plea. He feels that he was unduly forced to make this plea because of leniency that was promised to the co-defendant, which is his wife." The court replied, "The motion to withdraw the plea is denied."

Thereafter, the court imposed the agree upon nine-year sentence.

[Petitioner] interrupted and the following colloquy occurred:

"[PETITIONER]: Excuse me, your Honor. Excuse me, your Honor. I don't know what he's doing. I really don't. But we need to sit here - - and I need to sit here and wait to see what is going on with my wife. He is sitting here talking about he's trying to save my appeal. I've already sat here and told him something else. I don't know what he's trying to do.

"THE COURT: I don't know what you're talking about.

"MR. RUCK [defense counsel]: Well, that is something I wanted to make sure, because I just spoke with the district attorney outside, he perhaps misremembered, but he has an appeal right on the 1538.

The court confirmed that [Petitioner] had a right to appeal from the ruling on the suppression motion and stated that it would issue a certificate of probable cause. [Petitioner] said, "I'm not guilty." The court replied, "Well, you know what, Mr. Perez. You changed your plea and you pled guilty, so that's the way it is. Okay."

[Petitioner] asked the court to wait for "Percy" and Aquirre "to be here so we can do this. I feel more comfortable like that." The court stated that it did not see the purpose of waiting because Aquirre's "agreement is settled" and she will receive[] the agreed upon sentence. The prosecutor stated that he spoke with Aquirre's counsel before this matter was called and he is 25 minutes away from the courthouse. Defense counsel and he are anxious for this proceeding to be completed so they can move on to other matters. The court responded, "Okay. All right. We'll continue."

The court continued reciting the sentencing conditions and parole rights. It asked [Petitioner], "You understand what I have told you about your parole rights?" [Petitioner] shook his head in the negative. When the court asked [Petitioner] what he did not understand, he replied, "I don't understand the fact of what he just pulled on me." The court answered, "I don't know what he's - - he's not pulled anything on you, as far as I know. You're getting the agreement that you had."

[Petitioner] said: "Your Honor, I sit there and everything that we have gone through, everything we have done, I sit there-you know what? I'm not guilty of this, okay. Regardless of whatever you might think, it's like - - come on, just because I have a past record?" The court replied: "No, not just because you have a past record, it's because of all of the facts and circumstances of the case, Mr. Perez. I read the transcripts and I'm familiar with this case, and I don't have any problems with your guilt. So anyway - -"

[Petitioner] interrupted, stating, "I didn't even have nothing on me, though. That's what I don't understand." The court asked, "You think you have to have it on your person in order to be found guilty?" [Petitioner] said, "My wife is willing to say it's her shit and she is willing to admit it."

At this point, the court began to set forth [Petitioner's] appeal rights. [Petitioner] interrupted again, stating, "My wife is going to come up here and sit there and plea. I mean, she's going to tell you the truth. Why don't you give her the chance and let her come up and tell the truth?" The court replied, "No, I'm not going to do that, Mr. Perez. You entered your plea and you're stuck with it." [Petitioner] said, "Your Honor, I have been dealt a bad hand for this whole - - in all of this. Can we just give my wife a chance to come up here and get her to sit here and tell her story?" The court answered, "No." [Petitioner] said, "But you're sending an innocent man to prison." The court replied, "No, I'm not." [Petitioner] reiterated his innocence and the court reiterated its disbelief. Eventually, [Petitioner] said, "Terry, come on. [¶] Okay, fine." The court completed the sentencing hearing without further comment from [Petitioner].

People v. Perez, 2010 WL 122151, *1-3 (Cal.App. 2010).

## DISCUSSION

I.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

4

529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable."  Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

III.     Exhaustion of State Remedies

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's

factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888. A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court. See Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366. The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court *unless he specifically indicated to that court that those claims were based on federal law*. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the *petitioner must make the federal basis of the*

7

> *claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident,"* Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000) (italics added).

In his reply, Respondent concedes that Petitioner has technically exhausted the state court remedies with respect to the claims presented in the federal petition. Exhaustion is satisfied "if it is clear that the claims are not procedurally barred under [state] law." Gray v. Netherland, 518 U.S. 152, 162 (1996).

IV.   Procedural Default

Respondent, however, argues that this Court is procedurally barred from reviewing the claims. The Court agrees with Respondent.

A claim is procedurally defaulted for federal habeas purposes if the state court relies on state procedural grounds to deny relief. Coleman v. Thompson, 501 U.S. 722, 729 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. Id. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989). In this case, the California Supreme Court rejected and refused to file Petitioner's petition for review on the ground that it was untimely, citing Cal. Rules of Court, rule 8.264.

The state law ground must also be independent of federal law. "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse, 244 F.3d at 704, *citing* Michigan v. Long, 463 U.S. 1032, 1040-41 (1983);

8

Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996), *quoting* Coleman, 501 U.S. at 735 ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'") "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000), *quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

Although Petitioner argues that the state timeliness rule set forth in the California Supreme Court letter is not firmly established or regularly followed, he fails to meet his burden. In any event, it is clear that on March 15, 2010 (the date of the default) the pertinent published rules provided:

> (1) the January 14, 2010 decision of the California Court of Appeal became final in thirty days, Cal.R.Ct. 8.264(b)(1), 8.366(a), (b)(1), i.e., on February 13, 2010;
>
> (2) the time for seeking review in the California Supreme Court was ten days thereafter, Cal.R.Ct. 8.500(e)(1), i.e., February 23, 2010; and
>
> (3) in any event, the last date the California Supreme Court would even have jurisdiction to act even on its own motion would be within thirty days of the opinion's finality, Cal.R.Ct. 8.512(c)(1), i.e., by March 15, 2010.

In his motion to amend and supplement his traverse, Petitioner makes the conclusory allegation, without any evidentiary support, that he made several attempts to file a timely petition for review but was prevented from doing so because of his placement in segregated housing due to a disciplinary action. The fact that Petitioner was placed in segregated housing is due to his own wrongdoing and not that of prison officials. Moreover, Petitioner simply fails to demonstrate that any alleged impediment continued to exist until May 5, 2010, the date he filed the petition for review. Furthermore, Petitioner never sought to file a state petition for writ of habeas corpus in the California Supreme Court as an alternative to a petition for review. Therefore, Petitioner has not demonstrated "cause" to excuse the procedural default. Notwithstanding the procedural bar, the claims fail on the merits.

1      Petitioner raises the following two claims in the instant petition: (1) ineffective assistance
2 of counsel for failing to move to withdraw his plea; and (2) his plea was induced by an illusory
3 promise that he would retain the right to appeal whether evidence should be suppressed under the
4 Fourth Amendment.

      A.      Ineffective Assistance of Counsel

6      In his direct appeal, Petitioner claimed trial counsel was ineffective for failing to move to
7 withdraw his plea.  Petitioner did not argue the motion had merit.  Rather, Petitioner claimed
8 counsel was constitutionally obligated to bring such motion unless actually frivolous.  The state
9 appellate court disagreed finding no such constitutional obligation, which is supported by
10 Supreme Court precedent.  See e.g. Knowles v. Nurzatabce, 129 S.Ct. 1411, 1422 (2009)
11 (counsel has no duty to press a claim reasonably perceived as weak).   Accordingly, there is no
12 basis for relief on this claim.  28 U.S.C. § 2254.

      B.      Invalid Plea

14      On direct appeal, Petitioner also claimed his plea was induced by an illusory promise that
15 he would retain his right to appeal whether evidence should have been suppressed under the
16 Fourth Amendment.  The state court found there was no illusion because Petitioner retained his
17 right to "challeng[e] denial of the suppression motions to the highest court of the land and seek[]
18 reconsideration of Fourth Amendment principles to challenge prevailing concepts of standing
19 and reasonableness to search."  Perez, 2010 WL 122151 at *6.  Petitioner presents no evidence to
20 question the state court's holding and relief is barred.  28 U.S.C. § 2254.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1.      The instant petition for writ of habeas corpus is DENIED;

2.      The Clerk of Court is directed to enter judgment in favor of Respondent; and

3.      The Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c);
      Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where
      the applicant has made "a substantial showing of the denial of a constitutional
      right," i.e., when "reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong"; <u>Hoffman v. Arave</u>, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:**   **February 25, 2011**                      **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE